## DOTY and others vs. STRONG.

1. PRACTICE. Where a defendant is defaulted for want of a plea, and the plaintiff agrees to set aside the default on condition that the defendant will plead to the merits and go to trial, a general demurrer to the declaration is not such a plea as the plaintiff is bound to receive, and if he objects to it, the court should not entertain it.

2. DEPOSITION. There is no rule of court or of law that limits the time of returning a deposition into court, or directs by whom it shall be delivered; and where a deposition was duly taken and certified, and returned

Doty et al. vs. Strong.

into court by the plaintiff on whose behalf it was taken on the second day of the term, several months after it was taken, it ought not on that account to be rejected.

3. PRACTICE. A deposition or a witness should be objected to at the time of offering to read the deposition or swear the witness; if once admitted, the court cannot take either from the jury by instruction, though the court may instruct the jury to disregard evidence or testimony on the ground of interest developed during the trial.

4. EXCEPTIONS. Exceptions taken in the court below to testimony will not be considered, unless the evidence is made a part of the record by bill of exceptions.

5. COMMON CARRIERS. Common carriers are liable upon their general undertaking to the public, for neglecting or refusing to transport the goods of any person who applies to them with such goods as they have undertaken to carry, in condition to be transported, at the place designated for receiving them; and no special contract with the particular person so applying is necessary to charge them.

6. SAME. In an action against common carriers upon their general undertaking, it is necessary to fix upon them their character as such by testimony; and a notice of their general undertaking, published by them in a public newspaper, when connected with the defendants by other evidence, is proper testimony in the cause.

7. SAME. In an action against common carriers for neglecting or refusing to carry goods, it is not necessary to prove any special undertaking of the defendants. Common carriers are liable for refusing to carry when properly requested, as well as for negligently carrying or failing to carry after freights have been delivered to them.

8. A refusal of the court to instruct the jury upon abstract principles of law, not involved by the record or the facts, is not error, and the court must pass upon the facts so far as to decide what legal principles are applicable to the case.

9. The fact that no freight boats passed on the line of transportation in which the common carriers were engaged, after the application of the plaintiff, is no defense to the action; if the fact had been that boats could not possibly pass at the time of the request, from causes beyond the control of the defendants, they would then be excused for refusing to carry.

ERROR to the District Court for *Dane* County.

This was an action of assumpsit, commenced by *Strong* against the plaintiffs in error, in the Iowa county district court. The declaration contained two counts; the first alleging that the defendants made arrangements to transport merchandise from Green Bay to the Wisconsin Portage in Durham boats of thirty tons burden, and that they

Doty et al. vs. Strong.

undertook and promised the public to transport all such merchandise and freight as they should be reasonably requested to do, from Green Bay to the Portage, at *one dollar and twenty-five cents per one hundred pounds;* that on the 10th September, 1839, the plaintiff had at Green Bay a large quantity of freight, consisting of merchandise and household furniture; that the defendants were then and there requested by the agents of the plaintiff to transport the same to the Portage, but the defendants not regarding their said undertaking, refused so to do; that the plaintiff was unable to get his goods transported by water, and was compelled to leave them for a long time at Green Bay, whereby they became greatly damaged; and that the plaintiff was put to great expense in hiring teams to haul the said goods from Green Bay to the Portage, by all of which he sustained great damage, and averred that the defendants became liable to pay said damages, and that in consideration thereof they undertook and promised to do so. The second count was for money paid, laid out and expended. To this declaration the defendant *Doty* pleaded the general issue, before the other defendants were served with process. Upon this plea a trial was had in the Iowa county district court, and a verdict and judgment rendered in favor of the plaintiff. *Doty* sued out a writ of error, and at the August term, 1840, of this court, *ante,* the judgment was reversed, and the cause remanded for further proceedings.

After this, the plaintiff sued out an *alias* process and had it served upon *Jones* and *Irwin,* and also obtained leave to amend his declaration, upon which he filed a new declaration, setting up a special undertaking of the defendants to carry the goods, etc., and averring special damages. To this declaration, the defendant *Doty* demurred generally, and the court sustained the demurrer, to which the plaintiff excepted. After these proceedings the cause was removed, by change of venue, to *Dane* county, the plaintiff's declaration having been amended.

At the November term, 1841, of the *Dane* county district

court, the defendants *Jones* and *Irwin,* who had been served with process, were in default for want of a plea, when the plaintiff agreed to waive the default on condition that they would plead to the merits and go to trial ; whereupon they offered to file a general demurrer to the declaration, which was objected to by the plaintiff as not within the stipulation ; and on a subsequent day of the term, the court decided that the demurrer was not within the terms of the agreement allowing them to plead, and that they must plead to the merits or be defaulted, upon which they pleaded the general issue. The cause was tried at that term of the court, and in the progress of the trial the defendants excepted to the following decisions of the court :

1. In permitting the plaintiff to read in evidence an advertisement of the Fox River Navigation Company, published in a newspaper purporting to be printed at Green Bay, and signed by the defendants, in which they offered to transport merchandise as charged in the plaintiff's declaration, and a file of said newspaper from July to October, 1838, containing said advertisement.

2. To the admission of a certain written contract between the plaintiff and Calvin Frink.

3. To the admission of a certain written contract between the plaintiff and William Longdo.

4. To the admission of the deposition of one Ormsbee. And also to the decisions of the court upon the several instructions to the jury asked for by the defendant, which are embodied in the opinion of the court.

The contracts with Frink and Longdo were not made a part of the bill of exceptions.

The commission to take the deposition of Ormsbee was issued upon interrogatories and cross interrogatories on the 25th of May, 1841, to Rutland, Vermont, according to the rules of court; was executed on the 27th of July, 1841, and was produced in court and filed by the plaintiff on the 9th of November, 1841, the second day of the term.

Doty et al. vs. Strong.

Ormsbee testified : That he was present at a conversation between the plaintiff *Strong* and *Jones* one of the defendants, on the 31st of May, 1839, in which *Jones* said that *Doty*, *Irwin* and *himself*, were all jointly interested and engaged in transporting property, etc., up Fox river to Fort Winnebago ; that each depended so much upon the others, that little or nothing was accomplished ; that as soon as *Strong's* goods arrived at Green Bay, he assured Frink and those with him, that they and the goods should be immediately sent up ; that Frink and Longdo were constantly urging to be sent off with the goods, but they were put off and delayed until *Strong* came for them in the winter ; that soon after the goods of *Strong* arrived at Green Bay, he, *Jones*, earnestly and particularly urged *Doty* and *Irwin* to have them sent up immediately ; that he, *Jones*, went to Detroit, and when he came back he was surprised to find that the goods had not been sent, and learned that the reason was, that *Doty* and *Irwin* had detained the boats in hopes of getting a contract to transport government troops to Fort Winnebago, and then it was too late ; that he, *Jones*, had found much fault with *Doty* and *Irwin* for not sending up *Strong's* goods, and they would all be obliged to pay *Strong* his damages ; that *Strong* then said to *Jones*, that his original intention had been to send his goods by the Ohio canal to Portsmouth, and thence to Galena, but at Buffalo he saw a Green Bay newspaper containing an advertisement signed by *Doty*, *Jones* and *Irwin*, agreeing to transport goods from Green Bay to the Portage for $1.25 per 100 pounds, and in consequence of that he sent his goods to Green Bay ; that *Jones*, upon being asked, said that they had issued such an advertisement, and that they intended to live up to it ; that it had made no difference that *Strong's* goods were stored in Bruce's warehouse, their warehouse was not finished, and Bruce's was the most convenient place where they could be stored ; that the arrangement made by *Strong* through Merrill at Fort Winnebago to pay the freight, etc., was entirely satisfactory, and that

the goods were not delayed a minute on that account, and that there was no other reason for the delay than as above stated ; that *Strong* then presented to *Jones* a bill of damages amounting to $1,700; when *Jones* said he had no doubt of *Strong's* heavy damages ; that *Doty* and *Irwin* ought to pay it, and if he had been at home instead of Detroit, he would have paid the bill if the goods had not gone ; he had no reason to doubt the correctness of the bill.

The jury returned a verdict in favor of the plaintiff for $1,163.88 damages, upon which the district court rendered judgment. To reverse this judgment the defendants below brought the cause into this court by writ of error, and assigned various errors in the record of the proceedings, which are noticed in the opinion of the court.

*M. M. Jackson* and *A. L. Collins*, for plaintiffs in error, argued 'that a common carrier is not bound to carry goods, unless a reasonable compensation is paid or tendered to him. If the goods are not such as he is accustomed to carry, or not in good condition, or if he has no convenience to carry them, or if they are brought at an unreasonable time, he is not bound to receive them. The boxes of goods and furniture of the plaintiff below were of so large a size that they could not be carried in Durham boats ; they arrived at Green Bay too late in the season to be sent up Fox river, and the defendants made no more trips that season. A carrier is not bound to receive goods, except when he is about to set out on his journey.

'The advertisement read from a public newspaper on the trial below, for the purpose of proving that the defendants were common carriers, ought not to have been admitted. To make it evidence, it was necessary to prove that it was published by the direction or sanction of the defendants, in order to identify them with the publication. This was not done. Ormsbee's deposition only proves the acknowledgments of *Jones*, and that cannot bind the other defendants until a partnership or joint liability is proven.

[3]The contracts between the plaintiff and Frink, and Longdo, had no legal connection with the case. It matters not whether the contracts are set out in the bill of exceptions or not. An inspection of the declaration will show that no possible contract of the kind could have any legitimate application to it.

[4]The deposition of Ormsbee was taken more than three months before it was filed, during the greater part of which time the plaintiff had it in his custody and withheld it from the inspection of the defendants, and brought it himself, into the court during the term, and on the eve of the trial. Such a practice is calculated to work great injustice to the opposite party by taking him by surprise, at so late a period that he cannot rebut the testimony, and the court ought to have rejected it and discountenanced the practice.

[5]The declaration alleges no undertaking to the plaintiff to carry, but a general undertaking to the public only. The plaintiff is not entitled to recover upon such a declaration, and the objection may be taken on error.

[6]The court below ought to have given the second instruction asked for by the defendants. It sets forth an established principle of law as to the commencement of the liability of common carriers. A delivery and acceptance of the goods to be carried begins the responsibility. Questions may arise as to whether a delivery was made or not, but in all cases the question is one of fact for the jury, and they must find a delivery actual or constructive. Story on Bailm. 340 ; 2 Kent, 468.

[7]The fifth instruction asked for was proper to be given as applicable to the case. For every undertaking that is binding in law, there must be a consideration moving from the other party. To hold the defendants responsible on their general liability as common carriers, and that is the only liability declared upon, the plaintiff ought to show that he had paid or tendered the price of carrying the goods. 2 Kent, 465.

[8]In the refusal of the court to give the seventh and

eighth instructions, the court assumed the facts and did not leave them to the jury to determine ; this the court has no right to do. If the principles of law are correct, they ought to have been given in charge, and the jury should have determined the facts.

[9]The court refused to give the ninth instruction, on the ground that the undertaking of the defendants in the public advertisement, implied a contract. If the plaintiff relied upon the general liability and implied contract of the defendants, then all evidence of a special contract or undertaking ought to have been rejected.

The declaration is founded upon a general liability only, and no evidence of a special undertaking is applicable to the issue, and the court should have given the instruction and rejected the evidence. Cowen's Treat. 96, 97; 2 Starkie, 198; *Clark v. Smith*, 14 Johns. 326.

*F. J. Dunn* and *Edward V. Whiton*, for defendant in error.

[1]The declaration is on a special undertaking. It is not an implied promise, and the court will infer that it was supported by proof when the record does not show the contrary. The deposition of Ormsbee proves the admission of the defendants below, that the advertisement was published by their authority, that they made the contract for transportation, and that the goods were received by them.

[2]The instructions asked for by the defendant were properly refused, because they had no connection with the case. However correct the principles of law may be in the abstract, it was no error in the court to refuse to give them to the jury, when there were no facts in the case to which they could be applied.

[3]The deposition of Ormsbee was taken according to the rules of court in every particular. The defendants say that they were surprised by the deposition, and object to the time of its filing because they had no time to rebut it. If Ormsbee had been produced on the stand and examined in court, which might have been the case, they

would have had still less time to rebut his evidence ; and so in the case of every witness.

⁴There is nothing in the record to enable this court to judge whether the written contracts between *Strong* and Frink, and *Strong* and Longdo, were properly admitted or not. The contracts themselves are not before the court, and in the absence of any thing to show the contrary, the law presumes that the district court decided right in admitting them.

⁵The defendants were sued as common carriers, and that character is fixed upon them by the testimony. Now it cannot be denied, that where a person holds himself out to the world as a common carrier, or agrees with a person to transport goods from one place to another, and the goods are deposited for him at the wharf or in a warehouse where he is in the habit of receiving his freights, or agrees to receive them, and he then neglects or refuses to carry them, that he is answerable in damages. The testimony shows that the defendants were satisfied with the arrangements to pay the freight ; that the goods were deposited in Bruce's warehouse at their request, or by their agreement, and that the transportation was delayed on no other account than the expectation of getting a government contract.

DUNN, C. J.    Error is prosecuted in this case to reverse the decisions and opinions of the district court of Dane county, on the various grounds presented in the assignment of errors.    The declaration of *Strong*, plaintiff in the court below, alleges :  "That the defendants (who are plaintiffs in error) made arrangements on or about the 26th of May, 1838, at Green Bay, in the county of Brown, and Territory of Wisconsin, to transport merchandise from said Green Bay to a place called the Wisconsin Portage, at or near Fort Winnebago, in the county of Portage, in said Territory, in Durham boats of thirty tons burden, and that they then and there undertook, assumed and promised to the public, to transport, for the sum of

Doty et al. vs. Strong.

one dollar and twenty-five cents per hundred pounds, from Green Bay aforesaid, to the Wisconsin Portage aforesaid, all such merchandise or freight as they should thereafter reasonably be requested to do." And the said plaintiff further averred in his said declaration, "that afterward, on the 10th day of September, 1839, at Green Bay aforesaid, he then and there had a large quantity of freight, consisting of household furniture and merchandise, of the weight of twelve thousand pounds, and that the defendants were then and there requested by the agents of the plaintiff to transport the same from Green Bay aforesaid to the Wisconsin Portage aforesaid, but the said defendants, not regarding their said undertaking, refused so to do, to the damage of the plaintiff," etc., etc., alleging special damage. The general issue was pleaded, and issue being joined, the parties proceeded to trial. During the progress of the trial many exceptions were taken to the opinions of the court, which will be considered in their order.

The last error assigned to an opinion of the court, on a question which had arisen before issue joined, for the sake of order, will be first considered. It is insisted by the plaintiffs in error, that "the court erred in refusing to entertain the demurrer filed by the said *Jones* and *Irwin* to the declaration of the said plaintiff below at the November term of the court." To understand this supposed error, it is necessary to consult the record embracing this part of the proceedings in the case. From the record it appears, that at the said November term, two of the defendants below, *Jones* and *Irwin*, were in an attitude to be defaulted for want of a plea under a rule; that the plaintiff below waived his right to a default, upon the terms that the said defendants should plead to the merits and proceed to trial. The defendants, under this waiver, filed their general demurrer, to which the plaintiff *Strong* objected, as against the terms of the waiver. The court continued the objection under advisement to a subsequent day of the term, and thereafter, on the seventh day of the

Doty et al. vs. Strong.

term, the court decided "that the said plaintiff had a right to insist on the terms of his waiver," whereupon, on leave, said plaintiff withdrew his joinder in demurrer, and the said defendants *Jones* and *Irwin* pleaded the general issue, the plaintiff joined, and the trial progressed.

We are of opinion that the terms of waiver are such as the plaintiff might properly have imposed ; that the demurrer was not a plea to the merits, therefore not a compliance with the terms ; that the plaintiff interposed his objection timely, and that the court decided correctly in enforcing the terms.   The joinder in demurrer, after the objection raised, without withdrawing it, does not vary the case, or imply a consent of the plaintiff to join in demurrer and waive his term, because his objection was pending for the opinion of the court, which if sustained, dispensed at once with the demurrer, and the joinder was only contingent, to be entertained if the objections were overruled.

The leave to withdraw the joinder was not necessary, as by the decision of the court, the demurrer was rejected as against the terms of the waiver.

In addition to the supposed error disposed of, the following are assigned :

1.  The court erred in admitting the newspaper containing the advertisement of the Fox River Navigation Company, and also the file of newspapers from July to October, 1838, in evidence.

2.  The court erred in admitting in evidence the contract entered into between the plaintiff and Calvin Frink.

3.  The court erred in admitting in evidence the contract entered into between the plaintiff and William Longdo.

4.  The court erred in admitting in evidence the deposition of Thomas J. Ormsbee.

5.  The court erred in refusing to instruct on the first point submitted by defendants.

6.  The court erred in refusing to instruct on the second point submitted by defendants.

7. The court erred in refusing to instruct on the third point submitted by defendants.

8. The court erred in refusing to instruct on the fourth point submitted by defendants.

9. The court erred in refusing to instruct on the fifth point submitted by defendants.

10. The court erred in refusing to instruct on the sixth point submitted by defendants.

11. The court erred in refusing to instruct on the seventh point submitted by defendants.

12. The court erred in refusing to instruct on the eighth point submitted by defendants.

13. The court erred in refusing to instruct on the ninth point submitted by defendants.

The defendants below were sued as common carriers ; "persons who undertake for hire or reward to transport the goods of such as choose to employ them from place to place." To make them liable as such, it is certainly incumbent on the plaintiff below to prove that they were, at the time of the act complained of, common carriers within the definition laid down, by such acts on their part, as indisputably fixed that vocation upon them. An advertisement in the public newspapers, notifying the public that they had undertaken the business of common carriers, is legal and proper evidence. It is necessary that the plaintiff should by evidence, have identified the defendants with the public notice. The introduction of such evidence, unsupported at the time by proofs showing that the advertisement was the act of the defendants, might appear to be erroneous, but if in the progress of the trial, proofs are adduced supplying this deficiency, then the decision of the court in permitting the advertisement to be read in evidence, is relieved from every appearance of objection. The deposition of Ormsbee, made a part of the record in this case by the exception to the opinion of the court, permitting it to be read as evidence on the trial (which exception was not well taken, as we shall show), proves conclusively that

the advertisement was the act of the defendants. The first error assigned is not well taken.

The second and third errors are similar, and may be disposed of together. The plaintiffs in error assume, that the district court erred in permitting two contracts, one between *Strong*, plaintiff below, and Calvin Frink, and the other between the said *Strong* and William Longdo, to be read as evidence on the trial. It is sufficient for the court to say, that the contracts referred to are not made a part of the record in this case by the bill of exceptions, and that the record presents nothing that will enable us to decide the points raised. Therefore, they are dismissed, without further comment.

The fourth error assigned, against the admission of the deposition of Ormsbee, is not apparent to the court. The rules, interrogatories and cross interrogatories, choice of commissioners by the parties, commission, taking of the deposition, certifying, sealing up and directing the same, are all unexceptionable. There were two points raised in the arguments of the error assigned : 1. The deposition was returned some two months after it was taken. 2. It was delivered by the plaintiff in the action into the district court, on the second day of the term at which the cause was tried, only four days before the trial. There is no rule of court or of law which limits the time of returning a deposition into court, or directs by whom or how it shall be conveyed. If a deposition is properly taken, certified, sealed up, directed, and the matter thereof is legal and proper evidence in the case, and it is ready in court before the trial, there certainly can exist no reason in law why it should not be read as evidence. We consider these to be the requisites of a legal and admissible deposition of a witness residing out of the Territory, under the law and rules of court. 1. The entry of a proper rule for a commission. 2. Due notice thereof to the opposite party, his agent or attorney. 3. The issuing of a commission under the rule in due form by the clerk, under seal, directed to the commissioner named, accom-

panied by a certified copy of all the interrogatories on file, with the names of the witnesses to be examined, and a copy of the first, fifth and sixth rules on the subject of depositions. 4. A compliance of the commissioners with the said fifth and sixth rules in taking the deposition and certifying the same. 5. A compliance with the said first rule in sealing up and directing the same; and 6. That the matter thereof be legal and pertinent evidence in the case. Ormsbee's deposition, by applying this test, is free from exception, and the district court did not err in permitting it to be read as evidence on the trial.

The fifth error assigned is that the court erred in refusing to instruct the jury on the first point submitted by defendants." The first instruction asked is: "If the jury believe that there is no proof of a contract between the plaintiff and defendants to carry the goods in question, other than the general advertisement to the public, then the plaintiff cannot recover." In deciding this question, we must consider the nature and extent of the undertaking of the defendants as applicable to the instruction asked. The definition of "common carriers" given, affords an easy solution of the question. "A common carrier is one who undertakes for hire or reward, to transport the goods of such as choose to employ him, from place to place." This is a general undertaking, and embraces every one in the community, and to make it particular, as an undertaking with a single individual, it is only necessary that he should apply with such goods as the common carrier has undertaken to transport, in condition to be transported, at the place designated, to have the goods carried on the terms proposed in the undertaking; then the contract becomes identical with the person then applying, and it requires no other special contract between the parties, to subject the common carrier to all legal liabilities as such, to the person applying. *Allen v. Sewell*, 1 Wend. 237; *Bank of Orange v. Brown*, 3 Wend. 158. The district court decided correctly in refusing the instruction.

The sixth error assigned is, "that the court erred in refusing to instruct on the second point submitted by defendants." The second instruction asked is: "If the jury believe that there is no proof of delivery of the goods in question, by the plaintiff or his agent to the defendants, and an acceptance by the defendants of said goods, then the plaintiff cannot recover."

This instruction seems to have contemplated a different cause of action than that set up in the plaintiff's declaration. This would have been a proper instruction in substance, if the plaintiff had sought to recover for negligence in carrying, or a failure to complete the carrying and delivery. This action is brought to recover damages for an absolute refusal to receive and carry ; for a violation *in limine* of the undertaking of the defendants. It cannot be questioned that common carriers are liable for refusing to carry, when properly requested, as well as for negligently carrying or failing to carry after the freights have been delivered to them. *Jackson v. Rodgers*, 2 Show. 328. Chief Justice JEFFRIES held, "that the action was maintainable as well against an innkeeper for refusing a guest, or a smith on the road who refuses to shoe a horse, being tendered satisfaction. The same opinion is held by Chief Justice HOLT in *Boson v. Sandford*, 1 Show. 104. These opinions are sustained by various decisions referred to in the cases cited. To insist that there should be proof of delivery and acceptance, when the gist of the action is an absolute refusal to receive and carry, appears to the court to be entirely against law and reason. The district court was correct in refusing the instruction.

The seventh error assigned is, " that the court erred in refusing to instruct on the third point submitted by defendants." The third instruction asked is: " If the jury believe from the evidence, the goods in question remained in possession of the agent of the plaintiff, and never were in the possession of the defendants as carriers, then the plaintiff cannot recover." It is so apparent, that it seems scarcely

necessary for the court to remark, that the reasoning and authority which disposes of the second instruction apply equally to this. If our opinion is sound on that, we must concur with the district court in the propriety of refusing this also.

The eighth error assigned is, "that the court erred in refusing to instruct on the fourth point submitted by defendants." The fourth instruction asked is: "If the jury believe from the evidence, the goods in question were deposited by the plaintiff or his agent in the warehouse of Bruce, a third person, and that Bruce had a lien for charges on said goods, the defendants were not bound to carry them in the absence of a special contract, unless the plaintiff shows, that said lien for charges was previously discharged, and he cannot recover." This instruction also grows out of a misapprehension of the plaintiff's true cause of action. Under a different state of case averred by the plaintiff and raised in the testimony, this instruction might have been proper. Considering the true cause of action and the facts presented on the record, it would not have been a proper instruction. If no other reason existed, the one assigned by the court was sufficient: "Because the *supposition* of charges is against the evidence in the case." The rule is, that a refusal to instruct on abstract principles of law, not presented by the record, nor by the facts in the case, is not error, however correct the principle, when applied to a proper case. Without claiming that the court should respond to the facts in a case, it must necessarily respond, so far as to decide whether a principle of law is raised by the facts, that the case may not be embarrassed by matters entirely foreign. If the charge had been given, would the result have been different, presuming that no other than legal evidence was produced at the trial? Ormsbee's deposition is the only evidence presented in the record for the inspection of this court; from this evidence, with the instruction, no other finding of

the jury could have resulted. The district court properly refused the instruction.

The ninth error assigned is, "that the court refused to instruct on the fifth point submitted by defendants." The fifth instruction asked is : "If the jury believe from the evidence, the defendants assumed to carry the goods in question for a certain price, and the plaintiff has not shown a compliance with the terms of such assumed contract, by tendering or paying said price, then the plaintiff cannot recover." The court refused to give the instruction, and referred to the evidence in the deposition. This instruction is like the one just disposed of, upon which we have expressed an opinion.

The tenth error assigned is, "that the court erred in refusing to instruct on the sixth point submitted by the defendants." The sixth instruction asked for is : "If the jury believe from the evidence, that the defendants did not assume to carry the goods in question, but merely neglected and refused to carry the said goods, the defendants are not liable under a general advertisement to carry for the public, and the plaintiff cannot recover." We consider this ground of error disposed of, by our opinion on the first instruction asked for by the defendants below, and will add nothing further to what is there laid down.

The eleventh error assigned is, "that the court erred in refusing to instruct on the seventh point submitted by the defendants." The seventh instruction asked is : "If the jury believe from the evidence, that no freight boats passed up Fox river, after the plaintiff's goods were deposited in Bruce's warehouse and not in the possession of the defendants, then the plaintiff cannot recover." Admit that the facts were as assumed in the instruction, they would not amount to a defense, even in a case to which they might apply. That boats *could not possibly pass up Fox river* at the time of the request made by the plaintiff, for causes entirely out of the control of the defendants, would excuse them for refusing to carry.

The fact that they *did not pass up* is a very different thing, and more allied to the plaintiff's cause of action than to the defense. The court properly refused the instruction.

The twelfth error assigned is, "that the court erred in refusing to instruct on the eighth point submitted by defendants." The eighth instruction asked is: "If the jury believe from the evidence, that there was no special contract to carry the goods in question, and no delivery of the same to the defendants by the plaintiff, and that there was only a qualified promise to carry the same if the defendants were able to do so, then the plaintiff cannot recover on an alleged breach of contract made to the public." There are three distinct matters embraced in this instruction: *No special contract; no delivery; and a qualified promise to carry.* The two former have been disposed of against the error assigned, and the latter branch of the instruction was given as asked, with the remark by the court, that the facts show a different state of case. The language of the court in the instruction, "if there were only a qualified promise to convey the goods, the plaintiff cannot recover on a general promise," fixes the character of the instruction, and shows conclusively, that the court intended the jury should respond to the facts, to which the principle of law was applicable. And the intimation in this instance does not infringe the rule, in its most rigorous sense, that the court should respond to the law, and the jury to the facts.

The thirteenth error assigned is, "that the court erred in refusing to instruct on the ninth point submitted by defendants." The ninth instruction asked is: "The court is requested to instruct the jury, to throw out of consideration all evidence proving a special contract of the defendants with the plaintiff, in relation to the carriage of the goods in question, as the plaintiff has not alleged in his declaration any such contract with him." The court refused so to instruct, remarking: "as the law, on the undertaking of the defendants as set forth in

their advertisement, implies a contract; and as the court supposes from remarks made on the deposition of Ormsbee, objecting to the same, for the reason that it was evidence of a special contract, that the instruction asked for is to rebut or reject that evidence." The rule is, that a deposition or witness should be objected to at the time of offering to read the deposition or swear the witness. If once admitted, the court cannot take either from the jury by instruction. The court may instruct the jury to disregard evidence or testimony, on the ground of interest developed on the trial. The court properly refused the instruction.

It is the opinion of this court that the judgment of the district court of Dane county be affirmed, with costs.